UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, TRAVELERS INDEMNITY COMPANY OF AMERICA, TRAVELERS INDEMNITY COMPANY, GULF UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) ) ) ) | No. 1:13-cv-01573-JMS-DML |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CITY OF KOKOMO, SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) | |
| Counter Claimant, | ) ) | |
| vs. | ) ) | |
| GULF UNDERWRITERS INSURANCE COMPANY, ST. PAUL FIRE & MARINE INSURANCE COMPANY, TRAVELERS INDEMNITY COMPANY, TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) ) ) ) ) ) | |
| Counter Defendants. | ) ) | |
| _____ | ) ) | |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) | |
| Cross Claimant, | ) | |

|  |  |
|---|---|
| | ) |
| vs. | ) |
| | ) |
| CITY OF KOKOMO, | ) |
| | ) |
| Cross Defendants. | ) |

**ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Presently pending before the Court is Plaintiffs St. Paul Fire and Marine Insurance Company, The Travelers Indemnity Company of America, and the Travelers Indemnity Company's (collectively, "Travelers") Motion for Summary Judgment. [Filing No. 94.] At issue in this litigation are the extent of Travelers' duties to defend and indemnify Defendant City of Kokomo (the "City") for claims involving environmental contamination with regard to three separate insurance policies issued to the City by the various Travelers entities for coverage periods between 2002 and 2013. Travelers asks that summary judgment be entered in its favor based on the pollution exclusions and landfill endorsements contained in each of those policies, and that the Court declare that Travelers has no duty to defend or indemnify the City with regard to an environmental contamination matter at 1130 South Dixon Road, Kokomo, Indiana (the "Site").[1] [Filing No. 95 at 6.] For the reasons that follow, the Court denies Travelers' motion.

**I.**

**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear,

---

[1] Travelers' duties to defend and indemnify the City with regard to property located at 1114 South Dixon Road, Kokomo, Indiana is also at issue in this litigation, [Filing No. 78 at 2 (allegations in operative complaint)], but Travelers did not move for summary judgment on its obligations with regard to that property, [Filing No. 95 at 6].

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d

903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following facts are undisputed, unless otherwise noted.

### A. Underlying Environmental Matter

The City has owned the Site since April 1, 1963. [Filing No. 95-7 at 7.] It operated a municipal landfill and incinerator on the Site from 1963 until the 1970s. [Filing No. 95-7 at 7.] Although the City still owns the Site, it is currently operated by Howard County as a yard waste recycling center. [Filing No. 95-11 at 5.]

In April 2011, the Indiana Department of Environmental Management ("IDEM") discovered metal drums exposed in a creek bank at the site. [Filing No. 95-11 at 3; Filing No. 95-7 at 7.] The drums "were in poor condition, leaking contents onto the creek banks." [Filing No. 95-7 at 7.] IDEM collected samples of the leaking material, and subsequent testing revealed high levels of lead, chromium, arsenic, and mercury. [Filing No. 95-7 at 7.] IDEM requested assistance from the United States Environmental Protection Agency ("EPA") on April 6, 2011. [Filing No. 95-11 at 5.]

The EPA conducted a Site Assessment on August 19, 2011, and tested the drums, surface, and subsurface soil of the Site.  [Filing No. 95-7 at 7.]  Certain samples exceeded the regional screening level ("RSL") for arsenic, lead, and PCBs, which are considered "hazardous substances" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA").  [Filing No. 95-7 at 7-8 (citing 42 U.S.C. § 9601).]  The EPA found the potential for the contamination at the Site to migrate to the groundwater and a nearby creek.  [Filing No. 95-7 at 8.]

On April 5, 2012, the EPA sent the City a First General Notice Letter, notifying the City of its potential liability at the Site for the environmental contamination (the "Underlying Environmental Matter").  [Filing No. 95-2; Filing No. 95-11 at 6.]  On July 23, 2013, the EPA and the City entered into an Administrative Settlement Agreement and Order on Consent for Removal Action (the "Agreement"), in which the City was declared a "responsible party" and agreed to perform certain actions and pay certain response costs incurred and to be incurred in connection with the Site.  [Filing No. 95-7 at 8.]  The Agreement set forth specific work to be performed at the Site.  [Filing No. 95-7 at 11-14.]  The City agreed to pay the EPA $118,046.26 for response costs already incurred, as well as future response costs as set forth in the Agreement.  [Filing No. 95-7 at 17-20.]

The City hired the environmental consulting firm SESCO Group ("SESCO") to provide services in connection with the Underlying Environmental Matter, including investigation and remediation of the Site.  [Filing No. 118-7 at 3.]  The EPA required the City to obtain and analyze samples for 147 substances, [Filing No. 118-7 at 5-9 (tables of substances)], and the investigation is ongoing, [Filing No. 118-7 at 3-4].

### B. Insurance Policies at Issue

After receiving the First General Notice Letter from the EPA, [Filing No. 95-2], the City

sought insurance coverage for the Underlying Environmental Matter, [Filing No. 95 at 7].  On June

14, 2012, Travelers agreed to participate in the defense of the City under the 2002-2004 Public

Entity General Liability policies issued to the City by St. Paul Fire and Marine Insurance Company

(the "2002-2004 Policies").  [Filing No. 95-3 at 2-5.]  Travelers specifically reserved its right to

withdraw participation in the City's legal defense "should it be determined that no potential

defense and/or indemnity obligation exists."  [Filing No. 95-3 at 5.]

Travelers declined to participate in the defense of the City with respect to the Underlying

Environmental Matter under the Public Entity General Liability and Commercial Excess policies

issued by St. Paul Fire and Marine Insurance Company for the period from January 1, 2007 to

January 1, 2011 (the "2007-2011 Policies").  [Filing No. 95-3 at 2-3.]  Travelers also declined to

participate in the defense of the City with regard to the Commercial General Liability and

Commercial Excess policies issued to the City for the period January 1, 2011 to January 1, 2013

(the "2011-2013 Policies").  [Filing No. 95-3 at 2-3.]  On January 22, 2013, Travelers sent a letter

more fully setting forth its decision to decline to defend the City under the 2007-2011 Policies and

the 2011-2013 Policies, specifically citing the pollution exclusions in those policies.  [Filing No.

95-4.]

### C. Federal Action

In October 2013, Travelers filed its Complaint against the City in federal court.  [Filing

No. 1.]  Travelers' operative complaint seeks a declaratory judgment that it has no duty to defend

or indemnify the City for the Underlying Environmental Matter pursuant to the insurance policies

at issue.[2]   [Filing No. 78.]   Travelers now seeks summary judgment on some of its claims, specifically requesting that the Court declare as a matter of law that it has no duty to defend or indemnify the City under the 2002-2004 Policies, the 2007-2011 Policies, or the 2011-2013 Policies.  [Filing No. 94.]

### III.
#### DISCUSSION

Travelers argues that it is entitled to summary judgment pursuant to the pollution exclusions and landfill endorsements found in each of the three insurance policies at issue.  [Filing No. 94 at 2.]   The City opposes Travelers' summary judgment request.   [Filing No. 119-1.] Because Travelers filed new evidence in support of its reply brief, [Filing No. 127], the City was granted leave to file a surreply brief, [Filing No. 129; Filing No. 131].

Each of the three policies has a pollution exclusion with materially different language that the Court will separately analyze.  The Court will, however, jointly analyze the parties' arguments regarding the applicability of the landfill endorsement because the three policies have similar language and issues of material fact dictate the same result at this stage of the litigation.

### A.  Insurance Policy Interpretation

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case."  *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The parties do not dispute that Indiana law governs this action.  Accordingly, this Court must "apply the law that would be applied by the Indiana Supreme Court."  *Lodholtz*, 778 F.3d at 639.  "If the Indiana

---

[2] Although seeking a declaratory injunction "is not an independent source of federal subject matter jurisdiction," *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008), the Court has confirmed that it has diversity jurisdiction over this action, [Filing No. 87].

Supreme Court has not spoken on the issue, [the Court] generally treat[s] decisions by the state's intermediate appellate courts as authoritative, unless there is a compelling reason to think that the state supreme court would decide the issue differently." *Id.*

The Indiana Supreme Court has summarized the well-established standards for interpreting insurance policies in Indiana as follows:

> Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment.  It is well settled that where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured.  This is especially true where the language in question purports to exclude coverage.  Insurers are free to limit the coverage of their policies, but such limitations must be clearly expressed to be enforceable.   Where provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity.   Where ambiguity exists not because of extrinsic facts but by reason of the language used, the ambiguous terms will be construed in favor of the insured for purposes of summary judgment.

*State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012) (citations and quotations omitted).  Additionally, the Court will "construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases, or paragraphs." *West Bend Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 598 F.3d 918, 921 (7th Cir. 2010) (applying Indiana law).  Words are given their ordinary meaning, though where ambiguity exists the policy is read "strictly against the insurer." *Id.*

**B. Pollution Exclusions**[3]

Travelers contends that it is entitled to summary judgment as a matter of law that it has no duty to defend, and thus no duty to indemnify, the City with regard to the Underlying Environmental Matter because each of the three insurance policies at issue contains a pollution exclusion.  [Filing No. 95 at 13-32.]  The City opposes Travelers' request for summary judgment on the basis of the pollution exclusions, contending that they are not specific enough for the Court to grant summary judgment in Travelers' favor under applicable Indiana law.  [Filing No. 119-1 at 16-26.] The Court will first set forth applicable Indiana law about pollution exclusions and then analyze the parties' specific arguments regarding each of the three policies at issue.

*1) Indiana Law Regarding Pollution Exclusions*

Indiana utilizes a unique approach to determine the applicability of a pollution exclusion in an insurance policy dispute.  *See Flexdar*, 964 N.E.2d at 851 (describing the two prevailing interpretation methods and noting that "Indiana has gone in a different direction").  The Indiana Supreme Court first addressed an insurance policy pollution exclusion in *American States Insurance Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996), where it ultimately concluded that the term "pollutants" used in the exclusion was ambiguous, requiring construction in favor of coverage.[4]  It

---

[3]  Although there are three insurance policies at issue, Travelers did not address them chronologically in its opening brief.  [Filing No. 95 (addressing the 2007-2011 Policies and the 2011-2013 Policies before the 2002-2004 Policies).]  The Court's review was complicated when the City chose to address the policies chronologically in its response, as opposed to in the order that Travelers addressed them.  [Filing No. 119-1.]  This problem could have been avoided by the parties working together before Travelers' summary judgment motion was filed to determine the manner that would most easily facilitate the Court's review.

[4] The policy at issue in *Kiger* defined "pollutants" as follows:  "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed." 662 N.E.2d at 948.

emphasized that the clause could not be read literally "as it would negate virtually all coverage." *Id.* at 948.

The Indiana Supreme Court has addressed pollution exclusions multiple times since *Kiger*, "reaching the same result each time" after finding each policy's definition of the word "pollutant" to be ambiguous and construing the language against the insurer by finding a duty to defend. *Flexdar*, 964 N.E.2d at 848 (collecting cases); *see also Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 777 F.3d 415, 417 (7th Cir. 2015) ("Visteon wanted Indiana law to apply because Indiana does not enforce standard pollution-exclusion clauses, and the insurance policy included as we noted such a clause."). Indiana applies "basic contract principles" and has "consistently held that the insurer can (and should) specify what falls within its pollution exclusion." *Flexdar*, 964 N.E.2d at 851. A policy is interpreted "from the perspective of an ordinary policyholder of average intelligence." *Id.* "Where an insurer's failure to be more specific renders its policy ambiguous, [the Court] construes the policy in favor of coverage." *Id.* "The question is whether the language in [the] policy is sufficiently unambiguous to identify [the substance at issue] as a pollutant." *Id.* (noting in the context of a pollution exclusion case involving TCE, "[t]he question is whether the language in State Auto's policy is sufficiently unambiguous to identify TCE as a pollutant"); *see also id.* at 849 (summarizing *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002), as concluding that "[b]ecause carpet glue fumes were not specifically included in the policy's definition of pollutants . . . the exclusion [was] ambiguous").[5]

---

[5] The definitions of "pollutants" in the pollution exclusions at issue in *Freidline* and *Flexdar* were identical to the definition found to be ambiguous in *Kiger*. *See Flexdar*, 964 N.E.2d at 847; *Freidline*, 774 N.E.2d at 41 (noting that the definition at issue therein was "identical" to the definition in *Kiger*).

The Seventh Circuit Court of Appeals, applying Indiana law, affirmed a decision that granted summary judgment in favor of an insurer on the basis of a pollution exclusion, finding that because the policy "was sufficiently explicit to exclude gasoline contamination from coverage," the insurer was free from its obligation to defend the insured. *West Bend Mut.*, 598 F.3d at 924. Although the actual definition of "pollutants" in that policy did not include gasoline, which was the substance at issue in that case, the Seventh Circuit concluded that a "fair reading of *Kiger* cannot lead to the conclusion that the explicit exclusion must be located in one particular part of the policy." *Id.* at 923. In other words, although the definition of "pollutants" at issue in *West Bend* was identical to the definition at issue in *Kiger*, because the pollution exclusion itself "clearly includes motor fuels" and the definition of the term "motor fuels" then "explicitly applies to gasoline," the plain language of the policy excluded coverage for damage arising from the gasoline leak at issue. *Id.*

### 2) 2002-2004 Policies

Travelers asks the Court to enter summary judgment in its favor regarding its duty to defend and indemnify the City for the Underlying Environmental Matter based on the pollution exclusion in the 2002-2004 Policies. [Filing No. 95 at 29-32.] The City opposes that request, contending that the policy's definition of the term "pollutant" is "fatally flawed" because it does not "identify any substances with specificity." [Filing No. 119-1 at 16-18.] The Court will set forth the relevant language from 2002-2004 Policies and then more specifically address the parties' arguments.

#### a) Relevant Policy Language

The 2002-2004 Policies contain the following language that is relevant to addressing the parties' arguments:

**Pollution injury or damage.**   We won't cover injury or damage or medical expenses that result from pollution at, on, in, or from any:

11

> · protected person's premises;
> · waste site; or
> · protected person's work site.

***

*Pollution* means any actual, alleged, or threatened discharge, dispersal, escape, migration, release, or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous, or thermal irritant or contaminant, including:

> · smoke, vapors, soot, fumes;
> · acids, alkalis, chemicals; and
> · waste.

*Waste* includes materials to be recycled, reconditioned, or reclaimed.

***

*Waste site* means any premises, site or location which is or was at any time used by or for any protected person or others for the handling, storage, disposal, processing, or treatment of waste.  For example:

*For several years waste generated by your maintenance garage was disposed of in a landfill owned by others.  The landfill was closed two years ago.  Nearby residents now allege that they're being injured by the waste from there.  We won't cover such injury.*

[Filing No. 95-13 at 2-4 (original emphases).]

b) Interpretation of Pollution Exclusion in 2002-2004 Policies

Travelers contends that the pollution exclusion in the 2002-2004 Policies is "sufficiently explicit to bar coverage for the Underlying Environmental Matter."  [Filing No. 95 at 29-32.]  It cites the definition of "waste" and emphasizes an explanatory example for what would not be covered, contending that it is as if the policies were "anticipating the precise claim that has been asserted here."  [Filing No. 95 at 31.]  Travelers argues that the pollution exclusion in the 2002-2004 Policies "unambiguously demonstrates by example that property damage resulting from pollution at a 'landfill' used 'by or for' the City is not covered."  [Filing No. 95 at 30.]

12

In response, the City contends that the definition of the term "pollutants" in the 2002-2004 Policies is "fatally flawed" and precludes coverage denial based on the pollution exclusion. [Filing No. 119-1 at 16.] The City emphasizes that Travelers omitted the definition of "pollutants" in its opening brief, instead directing the Court to the definition of "waste," which is a term "actually included in the overly broad definition of 'pollutant' consistently rejected by the Indiana courts." [Filing No. 119-1 at 17.] The City argues that the explanatory example to which Travelers cites is not on point and does not save the overbroad definition of "pollutant" at issue, especially because the EPA has required the City to test for 147 substances, none of which is specifically identified in the 2002-2004 Policies. [Filing No. 119-1 at 17.]

In reply, Travelers emphasizes that the Underlying Environmental Matter "is simply a claim for coverage for environmental contamination at a landfill." [Filing No. 127 at 9.] Travelers emphasizes the Seventh Circuit's holding in *West Bend* that the Court must give effect to the language of the pollution exclusion, not just the definition of "pollutants," and Travelers contends that the pollution exclusion in the 2002-2004 Policies makes clear that pollution from a landfill is not covered. [Filing No. 127 at 10-11.]

In its surreply, the City contends that Travelers attempts to get this Court to adopt an argument that the Indiana Supreme Court has already rejected—specifically, that the Court apply a "common-sense approach" to find that the pollution exclusion bars coverage for situations "ordinarily characterized as pollution." [Filing No. 131 at 3 (citing *Flexdar*, 964 N.E.2d at 851).] The City emphasizes that not one of the substances for which it is testing at the Site is specifically

identified in the 2002-2004 Policies.  [Filing No. 131 at 3.]  Thus, the City concludes that Travelers must defend it.  [Filing No. 131 at 5.][6]

The pollution exclusion in the 2002-2004 Policies states that it will not cover damage from "pollution," and the definition of "pollution" incorporates the definition of "pollutant."  [Filing No. 95-13 at 2-3.]  Thus, at issue—like in *Kiger* and its progeny—is whether the definition of "pollutant" in the policy at issue is sufficiently unambiguous to identify the substances at issue in the Underlying Environmental Matter.  *West Bend Mut.*, 598 F.3d at 924; *Flexdar*, 964 N.E.2d at 848.  Travelers does not argue that it is, likely because the definition of "pollutant" in the 2002-2004 Policies is identical to the definition of that term held to be ambiguous in *Kiger*.  *Compare Kiger*, 662 N.E.2d at 948 *with* Filing No. 95-13 at 3 (definition of "pollutant" in 2002-2004 Policies).  Instead, Travelers ignores the definition of "pollution" and "pollutant" in the 2002-2004 Policies and points to the definitions of "waste" and "waste site," contending that the pollution exclusion bars coverage because it is undisputed that the Site was a landfill from 1963 to the 1970s.[7]  [Filing No. 95 at 30-31.]  This argument misses the mark because although the pollution

---

[6] At the end of its surreply argument on this issue, the City states that the language of the 2002-2004 Policies "renders it likewise ambiguous and unenforceable, *thereby entitling the City to summary judgment*."  [Filing No. 131 at 5 (emphasis added).]  Because the City did not file a cross-motion for summary judgment, the Court will not consider the merits of the City's cursory request because it does not comply with Local Rule 7-1(a), which provides that "[m]otions must be filed separately…. A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court."

[7] The definition of "waste" in the 2002-2004 Policies "includes materials to be recycled, reconditioned, or reclaimed" and the definition of "waste site" incorporates the definition of "waste."  [Filing No. 95-13 at 3.]  It is undisputed that environmental testing has already revealed high levels of lead, arsenic, and PCBs.  [Filing No. 95-7 at 7-8.]  Additionally, the EPA has required the City to obtain and analyze samples for 147 total substances, including various types of RCRA 8 metals, TCLP metals, semi-volatile organic compounds ("SVOCs"), polychlorinated biphenyls ("PCBs") and dioxins, and volatile organic compounds ("VOCs").  [Filing No. 118-7 at 5-9 (tables of substances).]  Travelers does not argue that any of those substances are "materials to be recycled, reconditioned, or reclaimed."

exclusion bars coverage for "pollution at, on, in, or from any . . . waste site," the definition of "pollution" incorporates the definition of "pollutant." [Filing No. 95-13 at 2-3.]   Thus, even assuming that the Site is a "waste site," determining whether the pollution exclusion in the 2002-2004 Policies bars coverage for the Underlying Environmental Matter requires the Court to analyze the definition of "pollutant."   Because the definition of that term in the 2002-2004 Policies is identical to the definition that the Indiana Supreme Court found to be ambiguous in *Kiger* and ambiguity is construed against the insurer, Travelers is not entitled to summary judgment with regard to the 2002-2004 Policies.

*3) 2007-2011 Policies*

Travelers asks the Court to enter summary judgment in its favor regarding its duty to defend and indemnify the City for the Underlying Environmental Matter based on the pollution exclusion in the 2007-2011 Policies.   [Filing No. 95 at 19-25.]   Travelers relies on the definition of "pollutant" set forth in an Indiana Required Endorsement to policies (the "2007-2011 Endorsement").   [Filing No. 95 at 21-25.]   The City opposes Travelers' request, contending that the definition of the term "pollutant" in the 2007-2011 Endorsement is unenforceable due to lack of specificity.   [Filing No. 119-1 at 19-22.]   The Court will set forth the relevant policy language and then more specifically address the parties' arguments.

a) Relevant Policy Language

The 2007-2011 Policies contain the following language relevant to addressing the parties' arguments:

**Pollution work loss, cost, or expense.**   We won't cover any loss, cost, or expense that results from:

· any request, demand, order, or statutory or regulatory requirement that any protected person or others perform pollution work; or

· any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*\*\**

*Pollution work* means:

· the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing of any pollutant; or

· the responding to, or assessing, in any way the effects of any pollutant.

*\*\**

We explain the term:

· pollutant in the Pollution injury or damage exclusion . . . .

[Filing No. 95-13 at 20-21.]

The 2007-2011 Endorsement contains the following language relevant to addressing the parties' arguments:

**INDIANA REQUIRED ENDORSEMENT**

This endorsement changes your policy to comply with, or otherwise respond to, Indiana law.

*\*\**

**Definition of Pollutant – Replacement Or Addition As Required**

If any insuring agreement, endorsement, or other form in your policy contains an exclusion, limitation, or other coverage provision that applies to pollution, the following definition of pollutant:

· replaces the definition of pollutant, or the definition of pollutants, in that insuring agreement, endorsement, or other form if it contains a definition of that term . . . .

*\*\**

*Pollutant* means any solid, liquid, gaseous, or thermal substance or material, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, and waste, that:

16

- is identified as dangerous, hazardous, or toxic, or is otherwise regulated, in any federal or Indiana environmental, health protection, or safety law; or

- has an actual, alleged, or threatened irritating or contaminating effect on any person or property.

*** 

*Federal or Indiana environmental, health protection, or safety law* means any:

- law of the United States of America, which is also known as federal law; or

- Indiana state or local law;

that's intended to:

- control pollution;

- protect or safeguard human health, or

- protect any part of the environment, whether indoor air, outdoor air, land, surface water, or underground water.

For example:

*The following Federal laws:*

- *The Clean Air Act of 1970 (42 United States Code Section 7401).*

- *The Clean Water Act of 1977 (33 United States Code Section 1251).*

- *The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 United States Code Section 9601).*

- *The Emergency Planning and Community Right-To-Know Act of 1986 (42 United States Code Section 11001).*

- *The Federal Insecticide, Fungicide, and Rodenticide Act of 1972 (7 United States Code Section 136).*

- *The Occupational Safety and Health Act of 1970 (29 United States Code Section 651).*

17

- *The Pollution Prevention Act of 1990 (42 United States Code Section 13101).*

- *The Refuse Act of 1899 (33 United States Code Section 407).*

- *The Resource Conservation and Recovery Act of 1976, which is sometimes also referred to as the Solid Waste Disposal Act, (42 United States Code Section 6901).*

- *The Safe Drinking Water Act of 1974 (42 United States Code Section 300f).*

- *The Toxic Substances Control Act of 1976 (15 United States Code Section 2601).*

*The Section of the United States Code referenced after the title of each of the laws listed above is where each such law begins.*

*Indiana state law:  Any provision of Indiana Code Title 13 (Environment).*

***

*Federal or Indiana environmental, health protection, or safety law includes:*

- *any amendment to such law; and*

- *any list, regulation, or rule issued or promulgated under such law by a federal governmental authority or an Indiana state or local governmental authority.*

[Filing No. 95-13 at 21-24 (emphases added).]

b) Interpretation of Pollution Exclusion in 2007-2011 Policies

Travelers contends that the pollution exclusion in the 2007-2011 Policies is "on all fours with the language endorsed by the Indiana Supreme Court in *Flexdar*."  [Filing No. 95 at 19.] Travelers emphasizes that the 2007-2011 Endorsement incorporates multiple state and federal environmental laws, including CERCLA, and that substances classified as hazardous under CERCLA have already been discovered at the Site.  [Filing No. 95 at 21-23.]  Travelers also points to a "pollution, work loss, cost or expense" exclusion in the 2007-2011 Policies, arguing that it also precludes coverage for the Underlying Environmental Matter.  [Filing No. 95 at 24-25.]

18

In response, the City argues that the pollution exclusion in the 2007-2011 Policies is unenforceable due to its "failure to identify substances with specificity." [Filing No. 119-1 at 19.] The City contends that the 2007-2011 Endorsement "raises ambiguity to an art form" and that a policyholder of ordinary intelligence would not have a clear understanding of what substances are covered because it generally incorporates so many state and federal environmental laws. [Filing No. 119-1 at 19-21.] The City concludes that these general references to state and federal laws do not meet the required standard of specificity set forth in applicable Indiana law. [Filing No. 119-1 at 21-22.]

In reply, Travelers again contends that the definition of "pollutant" in the 2007-2011 Endorsement is sufficiently specific to preclude coverage for the Underlying Environmental Matter. [Filing No. 127 at 2-5.] Travelers emphasizes that the 2007-2011 Endorsement expressly bars coverage for damages caused by pollutants identified by CERCLA and that every substance the EPA has required the City to sample for the Site "is dangerous, hazardous or toxic under United States or Indiana health, safety, or environmental laws." [Filing No. 127 at 4-5.] Travelers also points to language in *Flexdar* that it contends shows that the Indiana Supreme Court would find the language of the 2007-2011 Endorsement to be sufficient to bar coverage.[8] [Filing No. 127 at 4.]

In its surreply, the City contends that the 2007-2011 Endorsement's reference to CERCLA does not cure the ambiguity in the definition of "pollution." [Filing No. 131 at 5.] It points out

---

[8] The City argues that Travelers waived this argument by raising it for the first time in its reply brief, [Filing No. 131 at 5], but the Court disagrees. While Travelers may have more extensively developed the argument in its reply, [Filing No. 127 at 3-4], it did argue in its opening brief that the language at issue in the 2007-2011 Policies is "on all fours with the language endorsed by the Indiana Supreme Court in *Flexdar* . . . ," [Filing No. 95 at 19]. Moreover, because the City had an opportunity in its surreply to address this argument, the City has not been prejudiced.

that CERCLA does not contain a list or definition of what it considers to be pollutants with specificity; instead, it cross-references other laws, statutes, and regulations.  [Filing No. 131 at 8.] The City distinguishes a policy cited with favorable language by *Flexdar*, emphasizing that the 2007-2011 Endorsement fails to specifically name a single substance or class of substances other than PCE and that the generally references to federal and state laws cannot save the ambiguity. [Filing No. 131 at 7.]

In *Flexdar*, the Indiana Supreme Court again held in the context of pollution exclusions, that Indiana applies "basic contract principles" and has "consistently held that the insurer can (and should) specify what falls within its pollution exclusion." *Flexdar*, 964 N.E.2d at 851.  The Indiana Supreme Court held that the policy at issue in that case was not sufficiently specific to do so, but in doing so, observed as follows:

> By more careful drafting State Auto has the ability to resolve any question of ambiguity.  *And in fact it has done so.*  In 2005 State Auto revised its policies to add an "Indiana Changes–Pollution Exclusion" endorsement.  The language more specifically defined the term "pollutants":
>
>> "Pollutants" mean[s] any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils ... carbon monoxide, and other exhaust gases ... mineral spirits, and other solvents ... tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals ... chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides ... and all substances specifically listed, identified, or described by one or more of the following references: Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions), Agency for Toxic Substances And Disease Registry ToxFAQs™, and/or U.S. Environmental Protection Agency EMCI Chemical References Complete Index.

964 N.E.2d at 851-52 (emphasis added).

Travelers relies on the Indiana Supreme Court's comment preceding the policy quoted above that the insurer "has the ability to resolve any question of ambiguity.  And in fact it has done so [with regard to a subsequent policy not at issue in that litigation]."  [Filing No. 127 at 4 (citing *Flexdar*, 964 N.E.2d at 852).]  Travelers contends that the Indiana Supreme Court "concluded that essentially this same pollution exclusion [in the 2007-2011 Endorsement at issue] contained the requisite terms to be enforced."  [Filing No. 127 at 4.]  The City disputes that conclusion, arguing that the *Flexdar* language at issue was dicta and pointing out key differences between the language of the policy in *Flexdar* and the language in the 2007-2011 Endorsement.  [Filing No. 131 at 5-7.]

The Court disagrees with Travelers that the *Flexdar* language to which it cites approves of the definition of "pollutant" in the 2007-2011 Endorsement.  The policy that was actually at issue in *Flexdar* contained the same definition of "pollutant" that the Indiana Supreme Court found to be ambiguous in *Kiger*.  *Compare Flexdar*, 964 N.E.2d at 847 *with Kiger*, 662 N.E.2d at 948. *Flexdar* reached the same result—emphasizing that "our decisions have consistently held that the insurer can (and should) specify what falls within its pollution exclusion"—and then observed that a subsequent version of the policy "resolve[d] any question of ambiguity."  964 N.E.2d at 851-52. Although the subsequent policy did contain a general reference to CERCLA, Travelers ignores that the substance at issue in *Flexdar* was TCE and that the Indiana Supreme Court had already found the key question to be "whether the language in State Auto's policy is sufficiently unambiguous *to identify TCE* as a pollutant."  *Id.* at 851 (emphasis added).  Thus, the Indiana Supreme Court's characterization of the subsequent policy as being sufficient to "resolve any question of ambiguity" appears to be a reference to that policy's specific inclusion of

21

"trichloroethylene (TCE)" as an excluded substance, not to its general reference to CERCLA.[9] *Id.* at 852.

The Court concludes that the definition of "pollutant" in the 2007-2011 Endorsement is not sufficiently specific such that the Court can grant summary judgment to Travelers regarding its duty to defend and indemnify the City.  In so finding, the Court is cognizant that a policy is interpreted "from the perspective of an ordinary policyholder of average intelligence" and that doubts about coverage are construed against the insurer and in favor of coverage.  *Id.* at 851-52. The 2007-2011 Endorsement does not specifically reference any of the substances that have already been found or are being tested for at the Site.  Instead, it generally incorporates eleven federal laws; the environmental title of the Indiana Code; any amendments to any of those laws; and any list, regulation, or rule issued or promulgated by a federal governmental authority or an Indiana state or local governmental authority.  [Filing No. 95-13 at 23.]  This general incorporation of state and federal laws is insufficient to comply with Indiana's stringent standard that an insurance policy "specify what falls within its pollution exclusion."  *See Flexdar*, 964 N.E.2d at 851-52; *see also id.* at 849 (summarizing *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002), as concluding that "[b]ecause carpet glue fumes were not specifically included in the policy's definition of pollutants . . . the exclusion [was] ambiguous").  Thus, the Court concludes that the definition of "pollutant" in the 2007-2011 Endorsement is ambiguous and that Travelers'

---

[9] Even if the Court's conclusion is incorrect, the Court finds the language at issue in *Flexdar* to be dicta, given that the policy about which the comment was made was not at issue in that case and was not extensively analyzed by the Indiana Supreme Court.  *See Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1411 (7th Cir. 1994) (holding that "[n]o court, even a federal court in a diversity suit, is obliged to treat a dictum of another court (or, for that matter, its own dicta) as binding precedent").

request for summary judgment with regard to its duty to defend and indemnify the City pursuant to the pollution exclusion in the 2007-2011 Policies must be denied.[10]

### 4) 2011-2013 Policies

Travelers asks the Court to enter summary judgment in its favor regarding its duty to defend and indemnify the City for the Underlying Environmental Matter based on the pollution exclusion in the 2011-2013 Policies.  [Filing No. 95 at 25-29.]  Travelers relies on the definition of "pollutant" set forth in the Indiana Required Endorsement attached to the policies (the "2011-2013 Endorsement").  [Filing No. 95 at 26-28.]  The City opposes Travelers' request, although it concedes that unlike the other policies at issue, the definition of "pollutant" in the 2011-2013 Policies "is sufficiently explicit to bar coverage for claims arising out of the substances it identifies." [Filing No. 119-1 at 24.]  The City contends, however, that "gaps in specificity" in the definition of the term "pollutant" still obligate Travelers to defend the City under the 2011-2013 Policies.  [Filing No. 119-1 at 22-26.]  The Court will set forth the relevant policy language and then more specifically address the parties' arguments.

### a) Relevant Policy Language

The 2011-2013 Policies specifically exclude coverage for "[p]ollution costs," which are defined as follows:

"Pollution costs" means any loss, cost or expense arising out of:

> a.  Any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove,

---

[10] The Court's conclusion that the definition of "pollutant" is ambiguous also requires the Court to reject Travelers' argument regarding the "pollution work loss, cost, or expense" exclusion in the 2007-2011 Policies, [Filing No. 95 at 24-25], because the definition of "pollution work" expressly incorporates the definition of "pollutant," [Filing No. 95-13 at 21] ("Pollution work" means: the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing of any pollutant; or the responding to, or assessing, in any way the effects of any pollutant. . . . . "We explain the term . . . pollutant in the Pollution injury or damage exclusion . . . .")].

contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants"; or

b.   Any claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

[Filing No. 95-13 at 30-31.]

The 2011-2013 Endorsement defines the term "pollutants" as follows:

## INDIANA CHANGES – DEFINITIONS OF POLLUTANTS

*** 

The definition of "pollutants" in the **DEFINITIONS** Section of this Coverage Part or in any endorsement to this Coverage Part is replaced by the following:

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. "Pollutants" includes:

a.   Petroleum or petroleum derivatives, gasoline, fuels, lubricants, and their respective additives and individual chemical components, including benzene and toluene;

b.   Chlorinated and halogenated solvents, including tetrachloroethylene (PCE or PERC), trichloroethylene (TCE), trichloroethane (TCA) and vinyl chloride, and their degradation products;

c.   Coal tar, manufactured gas plan (MGP) byproducts and polynuclear aromatic hydrocarbons (PAHs), phenols and polychlorinated biphenyls (PCBs)' and

d.   Organic and inorganic pesticides, and inorganic contaminants, including arsenic, barium, beryllium, lead, calcium, chromium and mercury.

[Filing No. 95-13 at 31-32.]

b) Interpretation of Pollution Exclusion in the 2011-2013 Policies

Travelers argues that the pollution exclusion in the 2011-2013 Policies unambiguously bars coverage of "pollution costs" associated with the Underlying Environmental Matter.  [Filing No. 95 at 25-29.]  It contends that the definition of "pollutants" in the 2011-2013 Endorsement is

24

sufficiently specific as required by Indiana law.  [Filing No. 95 at 26-29.]  Travelers emphasizes

that the substances that have already been identified in the Underlying Environmental Matter are

specifically enumerated in the definition at issue.  [Filing No. 95 at 27.]  Thus, Travelers contends

that coverage for the Underlying Environmental Matter is barred and this Court should grant its

motion for summary judgment with regard to the 2011-2013 Policies.  [Filing No. 95 at 27-29.]

     In response, the City concedes that the pollution exclusion in the 2011-2013 Policies "is

sufficiently explicit to bar coverage for claims arising out of the substances it identifies."  [Filing

No. 119-1 at 24.]  It contends, however, that Travelers still has a duty to defend the City under the

policy because testing is ongoing, the City is sampling for 147 substances, and substances such as

selenium and silver are not specifically identified in the definition of "pollutants."  [Filing No.

119-1 at 24.]  It emphasizes that Travelers' duty to defend is broader than its duty to indemnify

and argues that Travelers must defend it "[b]ased on these gaps in specificity . . . until an

investigation of the Site is completed and a remediation work plan is approved by EPA."  [Filing

No. 119-1 at 24.]

     In reply, Travelers points out that silver and selenium are types of inorganic contaminants,

which is a category of excluded substances listed in the 2011-2013 Endorsement.  [Filing No. 127

at 6.]  Travelers contends that the City's position is impractical because it would require a pollutant

to be "precisely identified, by its exact name" for coverage to be excluded.  [Filing No. 127 at 7-

8.]

     In its surreply, the City emphasizes that it "never argued that each of the substances at issue

in the EPA Action must be listed individually and precisely identified by its exact name."  [Filing

No. 131 at 10.]  The City admits that it "acknowledged that the use of a class of substances like

petroleum derivatives was sufficiently explicit to bar coverage for substances within that class."

[Filing No. 131 at 10.]  While the City does not deny that silver and selenium are types of inorganic contaminants, it contends that an average policyholder would not be aware that they were excluded from coverage.  [Filing No. 131 at 11.]  The City points out that Travelers relies on testimony from an environmental consultant to support its argument, and that the consultant's knowledge "is not indicative of how an ordinary policyholder would interpret that exclusion."  [Filing No. 131 at 11.]  Thus, the City asks the Court to deny Travelers' request for summary judgment with regard to the 2011-2013 Policies because the investigation into the Site is ongoing and not all substances that are being tested for are specifically included in the exclusion.  [Filing No. 131 at 11-12.]

It is well-settled in Indiana "that an insurer's duty to defend is determined by the allegations of the complaint coupled with those facts known to or ascertainable by the insurer after a reasonable investigation."  *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 405 (Ind. Ct. App. 2007) (citations omitted).  It is also well-settled that "the insurer's duty to defend is broader than his contractual obligation to provide coverage, but this duty is not boundless."  *West Bend*, 598 F.3d at 921.  "Where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by a policy, the insurer may properly refuse to defend."  *Id.* at 922 (citing *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind. Ct. App. 1992)).  Thus, when an exclusion precludes coverage, the insurer does not have a duty to defend.  *West Bend*, 598 F.3d at 922.

"Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence."  *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246-47 (Ind. 2005).  If reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous.  *Id.*  Ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage.  *Id.* (citing *Bosecker v. Westfield*

*Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000)).  "Terms are to be given their ordinary and generally accepted meaning." *Allgood*, 836 N.E.2d at 247 (citing *Kiger*, 662 N.E.2d at 947).

The City has narrowly framed the issue in response to Travelers' motion with respect to the 2011-2013 Policies, and the Court will address it as such.  Specifically, the City concedes that "the use of a class of substances" may be "sufficiently explicit to bar coverage for substances within that class."  [Filing No. 131 at 10.]  Although the EPA has ordered the City to test for 147 substances, the City only identifies two substances—silver and selenium—that it contends are not sufficiently identified by the definition of "pollutant" in the 2011-2013 Policies and, thus, allegedly trigger Travelers' duty to defend.  [Filing No. 119-1 at 24; Filing No. 131 at 11.]  While the City does not deny that silver and selenium are types of "inorganic contaminants"—which is a class of substances specified in the definition of "pollutant" at issue—it contends that a policyholder of average intelligence would not know that and, thus, Travelers must defend the City because of the ambiguity.  [Filing No. 131 at 11-12.]

The definition of "pollutant" in the 2011-2013 Endorsement includes "inorganic contaminants, including arsenic, barium, beryllium, lead, calcium, chromium, and mercury." [Filing No. 95-13 at 32.]  The Court agrees with the City that even though it is undisputed that silver and selenium are types of inorganic contaminants, an ordinary policyholder of average intelligence would not know that from the 2011-2013 Policies.  As support for such knowledge, Travelers cites deposition testimony from environmental consultant Bradley Adams, but Mr. Adams' testimony is not as clear as Travelers suggests.  [Filing No. 127 at 6 (citing Filing No. 127-2 at 15-16).]  In response to a question regarding whether certain unnamed minerals or metals are "inorganic materials," Mr. Adams testified, "I believe so."  [Filing No. 127-2 at 16.]  Neither the plain language of the pollution exclusion nor the equivocal testimony from an environmental

consultant supports Travelers' contention that an ordinary policyholder of average intelligence would know that silver and selenium are types of inorganic contaminants excluded from coverage in the 2011-2013 Policies.

Ambiguities in a policy are "construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage." *Allgood*, 836 N.E.2d at 246-47.  The Court concludes that the 2011-2013 Endorsement is not sufficiently specific such that Travelers has no duty to defend the City as a matter of law for testing for the substances silver and selenium, the only two substances indentified by the City. Thus, the Court denies Travelers' request for summary judgment on this issue.  Testing at the Site is ongoing, however, and should the results reveal that those substances are not present on the Site, the Court's conclusion would be affected.

### C.  Landfill Endorsements[11]

#### 1) Policy Language

Each of the three insurance policies at issue contain a Landfill Endorsement that Travelers contends precludes coverage for the City with regard to the Underlying Environmental Matter. [Filing No. 95 at 32-38.]  The City disagrees with Travelers' interpretation of the policies, and contends that an issue of material fact precludes summary judgment on the basis of the Landfill Endorsements.  [Filing No. 119-1 at 26-39.]

The 2002-2004 Policies include a Landfill Endorsement that provides as follows:

"**Excluded premises.**  We won't cover injury or damage or medical expenses that result from any

---

[11] The parties make individual arguments with respect to the landfill exclusions in the three policies in their briefing.  Given that certain evidence at issue creates a genuine issue of material fact and prevents Travelers' request for summary judgment with regard to the landfill exclusion in all of the policies, the Court will address them collectively.

of the following premises . . . [l]andfill, dump, refuse site, or incinerator."  [Filing No. 95-13 at 10-11 (original emphasis).]

The 2007-2011 Policies include a Landfill Endorsement that provides as follows:

> **Excluded operations and premises.**  We won't cover injury or damage or medical expenses that result from any of the following operations, including the ownership, maintenance, or use of any premises in those operations, [including] . . . [o]perations including the ownership, maintenance, or use of any premises for the handling, storage, disposal, processing, or treatment of waste, including any landfill, recycling center, or waste incinerator operation . . . .

[Filing No. 95-13 at 24-25 (original emphasis).]

The 2011-2013 Policies include a Landfill Endorsement that excludes coverage for "bodily injury or property damage arising out of any designated activities or operations," such as "[o]wnership, maintenance or use of any premises in any such designated activities or operations" including "[o]perations of any premises, site or location for the handling, storage, disposal, processing or treatment of waste, including any landfill, recycling center or waste incinerator operation . . . ."  [Filing No. 95-13 at 35-37.]

### 2) Issue of Material Fact

Travelers argues that the unambiguous language of the Landfill Endorsements precludes insurance coverage for the Underlying Environmental Matter because it is undisputed that the City operated the Site as a landfill from 1960 to the 1970s.  [Filing No. 95 at 32-38.]  Thus, Travelers requests that the Court grant summary judgment in its favor regarding its duty to defend and indemnify the City under all three policies.  [Filing No. 95 at 32-38.]

In response, the City contends that the Landfill Endorsements only apply to premises presently being used as landfills, and it is undisputed that the Site is no longer operating as a landfill.  [Filing No. 119-1 at 26-39.]  Even assuming that the Landfill Endorsements are unambiguous, the City contends that a genuine issue of fact exists regarding whether the

contamination at the Site is from its use as a landfill.  [Filing No. 119-1 at 31-34.]  In other words, while the City admits "there is no question that there is contamination at the Site . . . [t]he question, however, is whether the contamination is a result of the City's former use of the Site as a municipal landfill."  [Filing No. 119-1 at 35.]

In reply, Travelers cites evidence that the EPA considers the Site to be a landfill.  [Filing No. 127 at 11.]  It claims there is no evidence to indicate that the contamination at the Site "is the result of anything other than the use of the Site as a municipal landfill and dump" and that the City's argument otherwise is speculative.  [Filing No. 127 at 12-21.]  Given that it does not believe a material issue of fact exists, Travelers asks that the Court enter summary judgment in its favor on the Landfill Endorsement with regard to all of the policies.

In its surreply, the City emphasizes that the Site is currently operated as a yard waste recycling facility, not a landfill or a dump.  [Filing No. 131 at 12-16.]  The City again argues that the Landfill Endorsements do not clearly refer to past site uses and, thus, do not exclude coverage for the Underlying Environmental Matter.  [Filing No. 131 at 16-17.]  Because the City believes that there is a genuine issue of fact regarding whether the contamination at the Site is the result of the former use of the Site as a landfill, the City asks the Court to deny Travelers' request for summary judgment.  [Filing No. 131 at 17-21.]

The Court will not address the parties' divergent interpretations of the language of the Landfill Endorsements because it agrees with the City that a genuine issue of material fact precludes summary judgment.  Construing the evidence in a light most favorable to the City, as the Court is required to do on summary judgment, the Court cannot ignore evidence that the contamination at the Site may have occurred before the City owned the Site and operated is as a landfill.  Betsy McNamara, an environmental professional who conducted an assessment of the

Site on behalf of the City per the EPA, testified in her deposition that an aerial photo of the Site from 1952 showed surficial disturbances that may indicate dumping at the Site prior to the City's ownership of it as a landfill in 1963.  [Filing No. 118-3 at 8.]

Additionally, Robert Harris, Travelers' corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6), testified in his deposition that a prior owner of the Site "was also allowing dumping in that entire general area" and that "there were newspaper articles we've seen that talk about complaints about the site . . . even back in the 1950s and '60s."  [Filing No. 120-1 at 9-10.]  Mr. Harris pointed out that "with that as sort of a factual backdrop . . . we have a fact question as to how the City – where the City was actually operating, who it was directing to use what part, what – the City's presence on the site, what it understood about it, how it was operating the site, what the complaints were . . . ."  [Filing No. 120-1 at 10.]  In response to a question about interpreting the insurance policies at issue, Mr. Harris testified that although the language of the policy will control, "the facts of what pollution happened when and where and those facts are still being discovered [with the Site], but those facts are going to play into that issue."  [Filing No. 120-1 at 10.]  Although the City pointed to these portions of Mr. Harris' deposition in its response brief, Travelers does not address them in its reply brief.  [Filing No. 127.]

Unambiguous language from the Landfill Endorsements in all three insurance policies contains a causation requirement that the pollution must be the result of the City's operation of the Site as a landfill.  [Filing No. 95-13 at 10-11 (Landfill Endorsement in 2002-2004 Policies that excludes "injury or damage or medical expenses *that result from* any of the following premises . . . [l]andfill, dump, refuse site, or incinerator") (emphasis added); Filing No. 95-13 at 24-25 (Landfill Endorsement in 2007-2011 Policies that excludes "injury or damage or medical expenses *that result from* any of the following operations, including . . . any landfill . . .") (emphasis added);

Filing No. 95-13 at 35-37 (Landfill Endorsement in 2011-2013 Policies that excludes coverage for any "bodily injury or property damage *arising out of* any designated activities or operations," such as "[o]perations of any premises, site or location for the handling, storage, disposal, processing or treatment of waste, including any landfill . . .") (emphasis added).]  Thus, regardless of whether the language of the Landfill Endorsement requires that the Site be currently operated as a landfill (as the City claims) or previously operated as a landfill (as Travelers claims), summary judgment on this issue is inappropriate because the cited evidence shows that there is a genuine issue of material fact regarding whether the alleged pollutants were placed on the site before or while the City owned and operated it as a landfill.[12]   That disputed evidence bears directly on whether the claims for which the City seeks defense and indemnity are subject to the Landfill Endorsements.  For that reason, the Court denies Travelers' request for summary judgment on the Landfill Endorsements in all three policies at issue.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **DENIES** Plaintiffs' Motion for Summary Judgment Regarding the Pollution Exclusions and Landfill Endorsements.  [Filing No. 94.]  The Court denies summary judgment with regard to Travelers' request regarding the pollution exclusions in the insurance policies at issue, after concluding that, pursuant to applicable Indiana law, the definition of "pollutant" in those policies is ambiguous and, thus, must be construed against Travelers.  The Court also denies Travelers' request for summary judgment on the landfill

---

[12] Travelers challenges some of the additional evidence the City cites to show an issue of material fact as speculative, specifically contending that the opinions of the City's expert, John A. Mundell, "should be entirely disregarded."  [Filing No. 127 at 21.]  Because the Court has not relied on Mr. Mundell's opinions to reach its conclusion, the Court will not further address that argument.

endorsements in the insurance policies at issue, finding that a disputed issue of material fact exists

regarding their applicability to the Underlying Environmental Matter.

The Court asks the assigned Magistrate Judge to address the impact of this ruling on the

further development of this action at the July 22, 2015 status conference already scheduled.


DATE:  June 25, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via CM/ECF**:

Mary Fechtig
CARROLL MCNULTY & KULL, LLC
mfechtig@cmk.com

Adam C. Decker
PLUNKETT & COONEY PC
adecker@plunkettcooney.com

Charles W. Browning
PLUNKETT & COONEY, P.C.
cbrowning@plunkettcooney.com

Pamela A. Paige
PLUNKETT COONEY
ppaige@plunkettcooney.com

Danielle Perez
PLUNKETT COONEY PC
dperez@plunkettcooney.com

David L. Guevara
TAFT STETTINIUS & HOLLISTER LLP
dguevara@taftlaw.com

Thomas F. O'Gara
TAFT STETTINIUS & HOLLISTER LLP
togara@taftlaw.com